# EXHIBIT "F"

December 22, 2020

**RE:  Side Letter ("Letter") to the Purchase Agreement**

Ladies and Gentlemen:

Reference is made to that certain Equity Security Purchase Agreement dated July 1, 2020, as amended by the First Amendment to the Equity Security Purchase Agreement dated November 25, 2020 (the "Purchase Agreement"), by and between Douglas Belz ("DB"), Stephen DiMeglio ("SD"), and James Dvorak ("JD") (DB, SD and JD individually, a "Seller" and collectively, the "Sellers"); and Meghan LaBella ("ML") and Al LaBella ("AL") (ML and AL individually, a "Purchaser" and collectively, the "Purchasers"). Each of the foregoing are individually referred to herein as a "Party," and, collectively, as the "Parties." The Purchase Agreement and the documents specifically related thereto are collectively referred to herein as the "Transaction Documents." Capitalized terms not defined herein shall have the meanings provided in the Purchase Agreement.

In consideration of the undersigned Parties' entry into the Transaction Documents, as they may apply to each Party, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, by their signatures below, to the extent not satisfied on or before Closing, the Parties hereto hereby agree as follows:

1. The Companies shall pay to each Seller "all unpaid distributions from the Companies in respect to all federal, state, and local income taxes owed by such Seller for ... fiscal 2020 through the Closing Date" as soon as practicable but no later than such distributions are paid to Purchasers for fiscal 2020.

2. The Parties shall cooperate with one another and Purchasers shall use commercially reasonable efforts to transfer title to the automobiles to Sellers as set forth on Exhibit B of the Purchase Agreement as soon as practicable post-Closing.

3. The Parties shall cooperate with one another and Purchasers shall use commercially reasonable efforts to assign to Sellers the insurance policies described in Section 4(b)(iv) of the Purchase Agreement as soon as practicable post-Closing.

4. The Parties acknowledge and agree that Sellers have placed their own funds in the aggregate amount of $2,886,600 (the "Seller Escrow") into escrow pending the determination on forgiveness of certain PPP Loans, and that Companies hereby agree that all amounts held in Seller Escrow, to the extent forgiveness is received, shall be paid to Sellers pursuant to the PPP Loan Escrow Agreements to an account controlled exclusively by the Sellers. In the event that the Seller Escrow cannot be deposited in an account controlled exclusively by the Sellers, the Purchasers and the Companies agree that any and all forgiveness with respect to the PPP Loan Escrow Agreements shall be distributed exclusively to the Sellers in equal portions within one (1) business day of receipt. In the event that the Approved Loan Forgiveness Amount is less than Escrow Property (as defined in the Escrow Agreements), the Companies agree to appeal and dispute the SBA decision

[3542-001/3424474/7][3542-001/3421887]

Dvorak0000017

on the amount of loan forgiveness pursuant to the rules established by the SBA in connection with the PPP Loan program to the extent requested by Sellers and shall use best efforts to keep the Sellers informed of the appeal process through final determination. The Purchasers and the Companies covenant and agree that they shall not divert or otherwise use any amount of loan forgiveness for any purpose other than to repay the Seller Escrow to Sellers or take or permit to be taken any action inconsistent with the purpose of the Seller Escrow. In addition, to the extent the PPP Loans are not forgiven, Purchasers shall be jointly and severally obligated to Sellers, on a pro rata basis, in an aggregate amount not to exceed $721,650.00. Each of the obligations referred to in this paragraph may be evidenced by one or more promissory notes bearing simple interest at the then current federal interest rate on all outstanding amounts.

5. The Parties acknowledge and agree that the Blue Station Realty LLC PPP Loan with Santander Bank in the amount of $18,460 (the "Santander PPP Loan") will be paid in full on or before Closing and no escrow shall be necessary.

Nothing in this Letter shall be construed as a waiver by any Party of any right, power, condition, provision, or obligation under the Transaction Documents.

This Letter shall be governed, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

*[remainder of page intentionally left blank – signature page to follow]*

Dvorak0000018

Very truly yours,

**PURCHASERS:**

Meghan LaBella

Al LaBella

**SELLERS:**

Douglas Belz

Stephen DiMeglio

James Dvorak

**COMPANIES:**

**BLUE DIAMOND SHEET METAL, INC.**

By:

Name: Al LaBella

Title:   Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:

Name: Al LaBella

Title:   Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:

Name: Al LaBella

Title:   Vice President

**BLUE STATION REALTY LLC**

By:

Name: Meghan LaBella

Title:   Managing Member

*Signature page to Side Letter*

Very truly yours,

PURCHASERS:

_____
Meghan LaBella

_____
Al LaBella

SELLERS:

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvorak

COMPANIES:

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:   Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:   Managing Member

*Signature page to Side Letter*

Dvorak0000020

Very truly yours,

**PURCHASERS:**

_____
Meghan LaBella

_____
Al LaBella

**SELLERS:**

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvorak

**COMPANIES:**

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:  Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:  Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:  Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:  Managing Member

*Signature page to Side Letter*

Very truly yours,

**PURCHASERS:**

_____
Meghan LaBella

_____
Al LaBella

**SELLERS:**

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvorak

**COMPANIES:**

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:   Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:   Managing Member

*Signature page to Side Letter*

December 22, 2020

**RE:    Side Letter ("Letter") to the Purchase Agreement**

Ladies and Gentlemen:

Reference is made to that certain Equity Security Purchase Agreement dated July 1, 2020, as amended by the First Amendment to the Equity Security Purchase Agreement dated November 25, 2020 (the "Purchase Agreement"), by and between Douglas Belz ("DB"), Stephen DiMeglio ("SD"), and James Dvorak ("JD") (DB, SD and JD individually, a "Seller" and collectively, the "Sellers"); and Meghan LaBella ("ML") and Al LaBella ("AL") (ML and AL individually, a Purchaser" and collectively, the "Purchasers"). Each of the foregoing are individually referred to herein as a "Party," and, collectively, as the "Parties." The Purchase Agreement and the documents specifically related thereto are collectively referred to herein as the "Transaction Documents." Capitalized terms not defined herein shall have the meanings provided in the Purchase Agreement.

In consideration of the undersigned Parties' entry into the Transaction Documents, as they may apply to each Party, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, by their signatures below, to the extent not satisfied on or before Closing, the Parties hereto hereby agree as follows:

1. The Companies shall pay to each Seller "all unpaid distributions from the Companies in respect to all federal, state, and local income taxes owed by such Seller for ... fiscal 2020 through the Closing Date" as soon as practicable but no later than such distributions are paid to Purchasers for fiscal 2020.

2. The Parties shall cooperate with one another and Purchasers shall use commercially reasonable efforts to transfer title to the automobiles to Sellers as set forth on Exhibit B of the Purchase Agreement as soon as practicable post-Closing.

3. The Parties shall cooperate with one another and Purchasers shall use commercially reasonable efforts to assign to Sellers the insurance policies described in Section 4(b)(iv) of the Purchase Agreement as soon as practicable post-Closing.

4. The Parties acknowledge and agree that Sellers have placed their own funds in the aggregate amount of $2,886,600 (the "Seller Escrow") into escrow pending the determination on forgiveness of certain PPP Loans, and that Companies hereby agree that all amounts held in Seller Escrow, to the extent forgiveness is received, shall be paid to Sellers pursuant to the PPP Loan Escrow Agreements to an account controlled exclusively by the Sellers. In the event that the Seller Escrow cannot be deposited in an account controlled exclusively by the Sellers, the Purchasers and the Companies agree that any and all forgiveness with respect to the PPP Loan Escrow Agreements shall be distributed exclusively to the Sellers in equal portions within one (1) business day of receipt. In the event that the Approved Loan Forgiveness Amount is less than Escrow Property (as defined in the Escrow Agreements), the Companies agree to appeal and dispute the SBA decision

Page 1 of 3

[3542-001/3424474/7][3542-001/3421887]

on the amount of loan forgiveness pursuant to the rules established by the SBA in connection with the PPP Loan program to the extent requested by Sellers and shall use best efforts to keep the Sellers informed of the appeal process through final determination. The Purchasers and the Companies covenant and agree that they shall not divert or otherwise use any amount of loan forgiveness for any purpose other than to repay the Seller Escrow to Sellers or take or permit to be taken any action inconsistent with the purpose of the Seller Escrow. In addition, to the extent the PPP Loans are not forgiven, Purchasers shall be jointly and severally obligated to Sellers, on a pro rata basis, in an aggregate amount not to exceed $721,650.00. Each of the obligations referred to in this paragraph may be evidenced by one or more promissory notes bearing simple interest at the then current federal interest rate on all outstanding amounts.

5. The Parties acknowledge and agree that the Blue Station Realty LLC PPP Loan with Santander Bank in the amount of $18,460 (the "Santander PPP Loan") will be paid in full on or before Closing and no escrow shall be necessary.

Nothing in this Letter shall be construed as a waiver by any Party of any right, power, condition, provision, or obligation under the Transaction Documents.

This Letter shall be governed, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

*[remainder of page intentionally left blank – signature page to follow]*

[3542-001/3424474/7][3542-001/3421887]

Belz0000018

Very truly yours,

PURCHASERS:

_____

Meghan LaBella

_____

Al LaBella

SELLERS:

_____

Douglas Belz

_____

Stephen DiMeglio

_____

James Dvorak

COMPANIES:

**BLUE DIAMOND SHEET METAL, INC.**

By: _____

Name: Al LaBella

Title:   Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By: _____

Name: Al LaBella

Title:   Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By: _____

Name: Al LaBella

Title:   Vice President

**BLUE STATION REALTY LLC**

By: _____

Name: Meghan LaBella

Title:   Managing Member

*Signature page to Side Letter*

]

Very truly yours,

**PURCHASERS:**

_____
Meghan LaBella

_____
Al LaBella

**SELLERS:**

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvorak

**COMPANIES:**

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:  Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:  Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:  Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:  Managing Member

*Signature page to Side Letter*

Very truly yours,

**PURCHASERS:**

_____
Meghan LaBella

_____
Al LaBella

**SELLERS:**

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvorak

**COMPANIES:**

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:  Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:  Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:  Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:  Managing Member

*Signature page to Side Letter*

Very truly yours,

**PURCHASERS:**

_____
Meghan LaBella

_____
Al LaBella

**SELLERS:**

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvornk

**COMPANIES:**

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:   Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:   Managing Member

*Signature page to Side Letter*

December 22, 2020

**RE:    Side Letter ("Letter") to the Purchase Agreement**

Ladies and Gentlemen:

Reference is made to that certain Equity Security Purchase Agreement dated July 1, 2020, as amended by the First Amendment to the Equity Security Purchase Agreement dated November 25, 2020 (the "Purchase Agreement"), by and between Douglas Belz ("DB"), Stephen DiMeglio ("SD"), and James Dvorak ("JD") (DB, SD and JD individually, a "Seller" and collectively, the "Sellers"); and Meghan LaBella ("ML") and Al LaBella ("AL") (ML and AL individually, a "Purchaser" and collectively, the "Purchasers"). Each of the foregoing are individually referred to herein as a "Party," and, collectively, as the "Parties." The Purchase Agreement and the documents specifically related thereto are collectively referred to herein as the "Transaction Documents." Capitalized terms not defined herein shall have the meanings provided in the Purchase Agreement.

In consideration of the undersigned Parties' entry into the Transaction Documents, as they may apply to each Party, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, by their signatures below, to the extent not satisfied on or before Closing, the Parties hereto hereby agree as follows:

1.  The Companies shall pay to each Seller "all unpaid distributions from the Companies in respect to all federal, state, and local income taxes owed by such Seller for … fiscal 2020 through the Closing Date" as soon as practicable but no later than such distributions are paid to Purchasers for fiscal 2020.

2.  The Parties shall cooperate with one another and Purchasers shall use commercially reasonable efforts to transfer title to the automobiles to Sellers as set forth on Exhibit B of the Purchase Agreement as soon as practicable post-Closing.

3.  The Parties shall cooperate with one another and Purchasers shall use commercially reasonable efforts to assign to Sellers the insurance policies described in Section 4(b)(iv) of the Purchase Agreement as soon as practicable post-Closing.

4.  The Parties acknowledge and agree that Sellers have placed their own funds in the aggregate amount of $2,886,600 (the "Seller Escrow") into escrow pending the determination on forgiveness of certain PPP Loans, and that Companies hereby agree that all amounts held in Seller Escrow, to the extent forgiveness is received, shall be paid to Sellers pursuant to the PPP Loan Escrow Agreements to an account controlled exclusively by the Sellers. In the event that the Seller Escrow cannot be deposited in an account controlled exclusively by the Sellers, the Purchasers and the Companies agree that any and all forgiveness with respect to the PPP Loan Escrow Agreements shall be distributed exclusively to the Sellers in equal portions within one (1) business day of receipt. In the event that the Approved Loan Forgiveness Amount is less than Escrow Property (as defined in the Escrow Agreements), the Companies agree to appeal and dispute the SBA decision

Page 1 of 3

[3542-001/3424474/7][3542-001/3421887]

on the amount of loan forgiveness pursuant to the rules established by the SBA in connection with the PPP Loan program to the extent requested by Sellers and shall use best efforts to keep the Sellers informed of the appeal process through final determination. The Purchasers and the Companies covenant and agree that they shall not divert or otherwise use any amount of loan forgiveness for any purpose other than to repay the Seller Escrow to Sellers or take or permit to be taken any action inconsistent with the purpose of the Seller Escrow. In addition, to the extent the PPP Loans are not forgiven, Purchasers shall be jointly and severally obligated to Sellers, on a pro rata basis, in an aggregate amount not to exceed $721,650.00. Each of the obligations referred to in this paragraph may be evidenced by one or more promissory notes bearing simple interest at the then current federal interest rate on all outstanding amounts.

5. The Parties acknowledge and agree that the Blue Station Realty LLC PPP Loan with Santander Bank in the amount of $18,460 (the "Santander PPP Loan") will be paid in full on or before Closing and no escrow shall be necessary.

Nothing in this Letter shall be construed as a waiver by any Party of any right, power, condition, provision, or obligation under the Transaction Documents.

This Letter shall be governed, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

*[remainder of page intentionally left blank – signature page to follow]*

[3542-001/3424474/7][3542-001/3421887]

DiMeglio0000020

Very truly yours,

PURCHASERS:

_____
Meghan LaBella

_____
Al LaBella

SELLERS:

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvorak

COMPANIES:

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:  Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:  Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:  Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:  Managing Member

*Signature page to Side Letter*

]

Very truly yours,

PURCHASERS:

_____
Meghan LaBella

_____
Al LaBella

SELLERS:

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvorak

COMPANIES:

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:   Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:   Managing Member

*Signature page to Side Letter*

Very truly yours,

**PURCHASERS:**

_____
Meghan LaBella

_____
Al LaBella

**SELLERS:**

_____
Douglas Belz

_____
Stephen DiMeglio

_____
James Dvorak

**COMPANIES:**

**BLUE DIAMOND SHEET METAL, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:_____
Name: Al LaBella
Title:   Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:_____
Name: Al LaBella
Title:   Vice President

**BLUE STATION REALTY LLC**

By:_____
Name: Meghan LaBella
Title:   Managing Member

*Signature page to Side Letter*

Very truly yours,

**PURCHASERS:**

______________________________
Meghan LaBella

______________________________
Al LaBella

**SELLERS:**

______________________________
Douglas Belz

______________________________
Stephen DiMeglio

[redacted]
James Dvorak

**COMPANIES:**

**BLUE DIAMOND SHEET METAL, INC.**

By:______________________________
Name: Al LaBella
Title: Vice President

**DIAM-N-BLU MECHANICAL CORP.**

By:______________________________
Name: Al LaBella
Title: Vice President

**MIRAGE MECHANICAL SYSTEMS, INC.**

By:______________________________
Name: Al LaBella
Title: Vice President

**BLUE STATION REALTY LLC**

By:______________________________
Name: Meghan LaBella
Title: Managing Member

*Signature page to Side Letter*