# EXHIBIT "V"

**BLUE DIAMOND AIR SYSTEMS, INC.**

**FINANCIAL STATEMENTS**

**SEPTEMBER 30, 2021**

BLUE DIAMOND AIR SYSTEMS, INC.
NOTES TO FINANCIAL STATEMENTS
SEPTEMBER 30, 2021

Note 12 - <u>Long-Term Debt (cont'd.)</u>

Aggregate maturities of long-term debt are as follows:

| Years Ending September 30: | |
|---|---:|
| 2022 | $ 16,660 |
| 2023 | 17,467 |
| 2024 | 18,314 |
| 2025 | 13,338 |
| | $ 65,779 |

Note 13 - <u>Multiemployer Plans</u>

The Company contributes to a number of multiemployer defined benefit pension plans under the terms of collective-bargaining agreements that cover its union-represented employees. The risks of participating in these multiemployer plans are different from single-employer plans in the following aspects:

a. Assets contributed to a multiemployer plan by one employer may be used to provide benefits to employees of other participating employers.

b. If a participating employer stops contributing to a plan, the unfunded obligations of the plan may be borne by the remaining participating employers.

c. If the Company chooses to stop participating in a multiemployer plan, the Company may be required to pay that plan an amount based on the underfunded status of the plan, referred to as a withdrawal liability.

Case 8-24-08071-ast    Doc 15-22    Filed 11/19/24    Entered 11/19/24 10:59:56

# AGREEMENT
# SHEET METAL CONTRACTING DIVISION
# OF THE
# CONSTRUCTION INDUSTRY
# BETWEEN INTERNATIONAL ASSOCIATION SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS
# LOCAL UNION NO. 28



  

## SHEET METAL & AIR CONDITIONING CONTRACTORS ASSOCIATION
## OF NEW YORK CITY, INC.
## AND
## SMACNA OF LONG ISLAND, INC.
## AND THOSE EMPLOYERS
## WHO SUBSCRIBE THERETO

EFFECTIVE NOVEMBER 1, 2021
TERMINATES OCTOBER 31, 2025

# TABLE OF CONTENTS

| Article | | Page |
|---|---|---|
| I. | Jurisdiction | 1 |
| II. | Fan Maintenance | 4 |
| III. | Work Preservation And No Subcontracting | 5 |
| | Work Performed City of New York | 6 |
| | Work Performed Nassau/Suffolk Counties | 10 |
| IV. | Union Security | 12 |
| V. | Manpower | 13 |
| VI. | Apprentices | 15 |
| VII. | Wages | 16 |
| VIII. | Hours & Holidays | 18 |
| IX. | Shift Work | 19 |
| X. | Shop Steward | 20 |
| XI. | Travel | 20 |
| XII. | Fringe Benefit Funds | 22 |
| XIII. | Promotion Funds | 27 |
| XIV. | Owners And Owner-Members | 28 |
| XV. | Work Rules | 28 |
| XVI. | Market Recovery Addendum | 32 |
| XVII. | Miscellaneous | 32 |
| XVIII. | Grievance Procedure | 34 |
| XIX. | Term | 35 |
| | Sketch A | 36 |
| | Sketch B | 37 |
| | Sketch C | 38 |
| | Joint Negotiating Committee | 42 |
| | Side Letter Agreement | 43 |

# ARTICLE XII
# FRINGE BENEFIT FUNDS

## A. LOCAL UNION NO. 28 BENEFIT FUNDS

### SECTION 1. WELFARE FUND

A. The Employer shall pay to the Sheet Metal Workers' Local Union No, 28 Welfare Fund ("Welfare Fund") contributions as set forth in the schedule attached hereto. The contributions of the Employer shall be used to provide group insurance such as life, hospitalization, accident, including prepaid legal services, health and sick benefits and such other forms of group insurance as the said Welfare Fund may wish to provide in addition to administrative costs. The said Welfare Fund shall be administered pursuant to the Agreement and Declaration of Trust, as amended. The Welfare Fund shall provide/pay for an annual physical examination for all eligible participants.

B. In addition, the Employer shall pay the amount set forth in the schedule attached hereto which shall be used exclusively to provide vacation pay for eligible employees.

C. In addition, the Employer shall pay the amount set forth in the schedule attached hereto for each hour paid for all employees covered by this Agreement:

   (i) To provide weekly benefits as determined by the Trustees to unemployed journeyperson and apprentice sheet metal workers covered by this Agreement.

   (ii) To reimburse employees for time lost from work and/or expenses in obtaining an annual physical examination.

   (iii) To pay two (2) hours' wages to those employees who qualify under Article VII, Section 4 of this Agreement.

   (iv) To provide scholarships under a Competitive System and under the regulations established by the Trustees of this Fund.

### SECTION 2. EDUCATION FUND

A. The Employer shall pay the amount set forth in the schedule attached hereto to the Sheet Metal Workers' (Local Union No. 28) Education Trust Fund ("Education Fund") for each hour paid for all employees covered by this Agreement to provide for the establishment of standards and subsidies for the improvement of the proficiency, skill and ability of apprentice and journeyperson sheet metal workers, and further to provide for the education of such apprentices and journeyperson sheet metal workers now or hereafter members of the collective bargaining unit, and to provide such appropriate educational criteria and mechanical and scholastic attainments, greater skill and perfection in other and expanded fields to which such skills may be adapted and utilized all to the benefit of such apprentices and journeyperson sheet metal workers.

B. If the Associations and the Union agree that additional funding is required for the Education Fund the parties shall contribute additional equal sums up to a total of three cents ($ .03) from the Union and three cents ($ .03) from the Employer.

### SECTION 3. ANNUITY FUND

The Employer shall pay the amount set forth in the schedule attached hereto to the Sheet Metal Workers' (Local Union No. 28) Annuity Fund ("Annuity Fund") for each hour paid for all employees covered by this Agreement which shall be for the purpose of paying members of the Union termination benefits in the event of disability severance of employment or on any other basis prescribed by the Trustees and which will be on a vested basis under regulations established by the Trustees of said Fund.

## SECTION 4. SCHOLARSHIP FUND

The Employer shall pay the amount set forth in the schedule attached hereto to the Sheet Metal Workers' (Local Union No. 28) Joint Scholarship Fund ("Scholarship Fund") for each hour paid for all employees covered by this Agreement. Scholarships are to be awarded under a competitive system, and under the regulations established by the Trustees of said Fund. This Fund shall be merged into the Welfare Fund and cease to exist effective January 1, 2015.

## SECTION 5. LABOR MANAGEMENT COMMITTEE

The Employer shall pay the amount set forth in the schedule attached hereto to the Joint Labor Management Committee and Trust ("JLM") for each hour paid for all employees covered by this Agreement.

The contributions shall be for the purpose of protection and preservation of the work and jurisdiction covered in this Agreement.

## SECTION 6. LOCAL PENSION FUND

Commencing with the first payroll following the date hereof the Employer shall pay the amount set forth in the schedule attached hereto to the Sheet Metal Workers' (Local Union No. 28) Pension Fund for each hour paid for all employees covered by this Agreement.

The Agreement and Declaration of Trust establishing the Sheet Metal Workers' (Local Union No. 28) Pension Fund as amended and the Restatement of the Local Union No. 28 Pension Plan as amended from time to time are incorporated herein by reference and adopted by the Employer.

## SECTION 7.

A. Each Employer shall furnish a surety bond to the Trustees of the several Local Union No. 28 fringe benefit funds and of any Local Union No. 28 jointly administered funds which may hereafter be established in order to secure the payments of contributions to said benefit funds provided for in this Agreement. Each Employer is required to furnish a bond in the amount of seven thousand five hundred dollars ($7,500.00) per employee. In the event an Employer's manpower increases then said Employer shall be required to furnish a greater bond or cash deposit in accordance with the foregoing. The amount of manpower is to be determined by taking the highest number of sheet metal journeypersons and apprentices employed by the Employer for any three (3) prior consecutive months during the past twelve (12) months. For new employers the bond amount shall be determined by the number of journeypersons and apprentices employed at the time the employer becomes subject to the terms and conditions of the Local 28 Collective Bargaining Agreement.

B. A ventilation shop must furnish a minimum bond of thirty thousand dollars ($30,000.00); in the event an Employer becomes delinquent in its payment of contributions to the several Local Union No. 28 fringe benefit funds its minimum bond shall immediately be increased to sixty thousand dollars ($60,000.00).

C. An Employer having a shop and/or address outside of the seven (7) counties of New York shall furnish a surety bond with the Trustees as to all contributions for hours paid on job sites within the seven (7) counties of New York in such amounts as set forth above or their cash equivalency. Coverage under said surety bond shall be limited to Local Union No. 28 Trust Funds.

**SECTION 8.** The Union must withdraw members from the Employer in addition to all rights and remedies of the Union and Trustees if said Employer does not meet the bond and/or cash requirements of the Collective Bargaining Agreement. The Union shall be required to implement the provisions of this section no later than December 31, 2014.

**SECTION 9.** The Employer shall be required to make payment at one and one-half (1 1/2) the regular hourly rate to all the respective Local Union No. 28 Funds and Plans on all overtime hours worked Monday through Saturday and double the regular hourly rate for Sunday and holiday hours worked.

**SECTION 10.** An Employer may make payment of all fringe benefit contributions with a single check. An Employer, whose payment check bounces two times within a six (6) month period, shall be required to pay by certified check for the following six (6) months. A check that bounces for reasons other than contractor error shall not be deemed a bounced check for this purpose.

**SECTION 11.** All contributions to the Sheet Metal Workers Local Union No. 28 Funds and Plans shall be made weekly and received by the Funds' office no later than twenty-eight (28) days from the close of the week for which payment is made. Interest shall revert back to seven (7) days after the close of the payroll week if payment is not received by the twenty-eight (28th) day.

**SECTION 12.** All contributions on apprentices shall be subject to further allocation and adjustment by the Union.

**SECTION 13.** All contribution hourly rates shall be rounded off to the nearest cent.

**SECTION 14.** All reasonable costs, fees and disbursements incurred in the collection of delinquencies shall be paid by the delinquent Employer.

**SECTION 15.** All delinquent contributions shall bear interest of the prime rate plus twelve percent (12%) with a minimum of fifteen percent (15%) per year. There shall be a five (5) day grace period before the interest shall commence to accrue. The Employer shall receive written notice of delinquency. Interest shall run from the end of the grace period. In addition to the foregoing, all delinquent Employers may be charged with liquidated damages of twenty percent (20%) on the unpaid contributions.

**SECTION 16.** Each Employer shall submit a weekly report electronically (in accordance with the requirements of Federal Court Orders) on Friday to the Funds' Office for the previous payroll week. For each employee contributed for, Employers are required to indicate whether the employee is a Shop (S), Field (F), or Drafting (D) employee. Failure to file such report shall constitute a violation of the Employer's obligation under this Agreement and, among other available remedies, shall be subject to Section 15 above.

**SECTION 17.** The Union shall have the right to withdraw members from the Employer, in addition to all other rights and remedies of the Union and Trustees, after a thirty (30) day delinquency in the payment of weekly contributions, which can be non-consecutive, or the submission of monthly reconciliation reports, and the Union may exercise this right upon seventy-two (72) hours notice by mailgram, telegram, certified mail or facsimile transmission. The Union must withdraw members from the Employer after a six (6) week delinquency. The Union and the Funds shall have the right to bring an action in federal court pursuant to ERISA and/or to take other additional steps with regard to delinquent Employers as recommended by a joint management and labor committee. When manpower is withdrawn from a contractor after the seventy-two (72) hour notice, the contractor will pay wages and benefits to the members withdrawn from the job until the members are returned to work. This payment of wages and benefits must be paid before the members return to work. Withdrawn members shall attempt to seek other employment and will only get reimbursed for actual time lost.

**SECTION 18.** The books and records of the Employer shall be made available at reasonable times for inspection and audit by, but not limited to, the accountant, outside independent auditors or other representatives of the Trustees of any of Fringe Benefit Funds. The Employer shall be required to disclose upon such audits all payrolls and payroll ledgers, W-2 forms, quarterly federal payroll tax returns (Form 941), quarterly state payroll tax returns (Forms WRS2 and WRS-30), annual federal and state tax returns, cash disbursement journals, purchase journals, New York State employment records, insurance company reports, Employer remittance reports, payroll and supporting checks, ledgers, vouchers, 1099 forms, and any other documentation concerning payment of fringe benefit contributions for hours worked by Employees remitted to multiemployer fringe benefit funds other than Fringe Benefit Funds described herein, and any other items concerning payrolls. In addition, the aforementioned books and records of any affiliate, subsidiary, alter ego, joint venture or other related company of the Employer doing bargaining unit work within the Union jurisdiction, shall also be made available at all reasonable times for inspection and

audits by, but not limited to, the accountants, outside independent auditors or other representatives of the Trustees of the Fringe Benefit Funds. The Employer agrees to pay the cost of the audit if the audit shows a discrepancy of ten percent (10%) or more when compared to the total contributions made during the audit period.

**SECTION 19.**

- **A.** The Employer agrees to be bound by the provisions of the Collection Policy, By-Laws, and the Agreement and Declaration of Trust governing the various Trust Funds of Local Union No. 28 Benefit Funds, and the interpretations thereof by the respective Board of Trustees of the Funds as same may be amended from time to time, and hereby acknowledge that such trust documents are incorporated herein by reference and are adopted by the Employer.

- **B.** Employer contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer.

**SECTION 20.** The Union shall have the option to create an additional Taft-Hartley fund that is permissible under federal law.

## B. NATIONAL BENEFIT FUNDS

**SECTION 21.**

- **A.** The Employer shall pay the amount set forth in the schedule attached hereto to the Sheet Metal Workers' National Pension Fund ("Pension Fund"), for each hour paid or part of an hour for which an employee is covered by the Collective Bargaining Agreement between the Employer and the Union. Contributions are required for vacation time, sickness absences, and other hours for which payment is made to the employee.

- **B.** Contributions shall be paid on behalf of an employee starting with the employee's first day of employment in a job classification covered by the Collective Bargaining Agreement.

- **C.** The Agreement and Declaration of Trust establishing the Pension Fund is incorporated herein by reference, and thereby the Employer adopts the provisions of the Trust Agreement.

- **D.** It is agreed that all contributions shall be made at such time and in such manner as the Trustees require. The Trustees shall have the authority to have their auditor or an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions made to the Pension Fund. If the audit reveals that inaccurate contributions or insufficient contributions have been made, the Employer agrees to pay all accountants' fees incurred in making the audit not to exceed the extent of its delinquency, and also all legal fees and costs incurred collecting the delinquency.

- **E.** If an Employer's workforce did not perform any covered employment within a particular month, a remittance report shall be filed on the twentieth day (20) of the following month indicating that no covered employment was performed. Failure to do so shall subject the Employer to liability for all fees and costs resulting from its failure to file such a report or one hundred dollars ($100.00), whichever is greater.

**SECTION 22.** The Employer shall pay the amount set forth in the schedule attached hereto to the National Stabilization Agreement for the Sheet Metal Industry ("SASMI Fund") for each hour worked for all employees covered by this Agreement. The contributions of the Employer shall be used to provide unemployment benefits in periods of reduced work opportunities which cause periods of unemployment.

**SECTION 23.** Effective as of the date of this Agreement, the Employer shall contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) the hourly contribution rate established by the ITI Trustees. Such amount shall be contributed for each hour worked by each employee of the Employer covered by this Agreement. In the event that such hourly contribution rate is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the ITI, or, for purposes of collection and transmittal electronically or through the Local 28 Funds office.

Effective as of the date of this Agreement, the Employer shall contribute to the National Energy Management Institute Committee (NEMIC), the hourly contribution rate established by the NEMIC Trustees. Such amount shall be contributed for each hour worked by each employee of the Employer covered by this Agreement. In the event that such hourly contribution rate is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the NEMIC, or, for purposes of collection and transmittal electronically or through the Local 28 Funds office.

Effective as of the date of this Agreement, the Employer shall contribute to the Sheet Metal Occupational Health Institute Trust (Institute) the hourly contribution rate established by the Institute's Trustees. Such amount shall be contributed for each hour worked by each employee of the Employer covered by this Agreement until the Institute Trustees determine that the Trust is financially self-sufficient. In the event that such hourly contribution rate is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or, for purposes of collection and transmittal electronically or through the Local 28 Funds office.

The parties authorize the trustees of all National Funds (as defined below) to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various National Funds. The parties recognize that the National Funds can receive and process contribution reports and remittances electronically. The parties agree to encourage employers to utilize the electronic reporting and remittance system.

The parties agree to be bound by, and act in accordance with, the respective Plan Documents, Agreements and Declarations of Trusts and/or Trust Documents establishing or governing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States, and to the extent that this Agreement requires contributions to the following funds, the Sheet Metal Workers' National Pension Fund, National Stabilization Agreement of the Sheet Metal Industry Trust Fund, Sheet Metal Workers' National Health Fund, Sheet Metal Workers' International Association Scholarship Fund, Sheet Metal Workers' National Supplemental Savings Plan (collectively, "National Funds"), as applicable and the separate agreements and declarations of trusts of all other local or national programs and benefit plans to which it has been agreed that contributions will be made. In addition, the parties agree to be bound by any amendments to said trust or plan documents as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said documents.

SECTION 24.

- A. The Employer agrees to be bound by the provisions of the Agreement and Declaration of Trust governing the various National Benefit Funds, and the interpretations thereof by the respective Board of Trustees of the Funds, as same may be amended from time to time, and hereby acknowledge that such trust documents are incorporated herein by reference and are adopted by the Employer.

- B. Employer contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer.

SECTION 25. The Employer shall submit a remittance report and the required contributions to the NATIONAL BENEFIT FUNDS by the twentieth (20th) of the month following the month when covered employment was performed. Failure to file said report with the required contributions adopted hereinabove shall constitute a delinquency in violation of the Employer's obligations under this Agreement. The Trustees and/or Directors of the various National Benefit Funds may take whatever steps they deem necessary, including legal action, to collect such delinquent payments and provision of the Agreement notwithstanding. If delinquent, the Employer agrees to pay the interest, liquidated damages, attorney's fees and costs as provided in the respective Trust Agreement.

SECTION 26. The Employer shall make available to the National Benefits Funds any and all records of the covered employees which any of such Funds may require in connection with its sound and efficient operation.

SECTION 27. The Employer shall be required to make payment at one and one-half (1 1/2) times the regular hourly rate to the respective National Benefit Funds on all overtime hours worked Monday to Saturday and double the regular hourly rate for all hours worked on Sunday and holidays.

SECTION 28. If the Trustees of the National Pension Fund change their rules to allow a participating Local to change from the alternative schedule to the default schedule, then at that time either party may request that there be negotiations to discuss whether to change from the Alternative Plan to the Default Plan.

## ARTICLE XIII
## PROMOTION FUNDS

SECTION 1.

- A. The Employer shall contribute to the Sheet Metal Industry Promotion Funds created by the Trustees of the Sheet Metal Industry Promotion Fund of New York City and the Trustees of the Sheet Metal Industry Promotion Fund of Nassau and Suffolk Counties, the amount set forth in the schedule attached hereto, for all employees covered by this Agreement. Reports shall accompany each remittance on forms as required by the Trustees of the Fund. Contributions by Employers shall be made weekly, mailed on the same day wages are due, and for the same period. All reasonable costs, fees and disbursements incurred in collection of delinquencies shall be paid by delinquent Employers. All delinquent contributions shall bear interest of the prime rate plus twelve percent (12%) with a minimum of fifteen percent (15%) per year.

    There shall be a five (5) day grace period before the interest shall commence to accrue. The Employer shall receive written notice of the delinquency.

- B. The contribution rate per hour may be adjusted at the sole discretion of the Employer Associations.

SECTION 2. The Industry Promotion Fund shall be used to promote the welfare of the sheet metal industry within the City of New York and Nassau and Suffolk Counties; and, more specifically, to make known the jurisdiction of the industry and to promote the programs of industry, education, training, administration of

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

Collective Bargaining Agreements, and research and promotion of sheet metal products; to stabilize and improve Employer-Union relations; to promote, support and improve the training and employment opportunities of employees; and to disseminate to general contractors, architects, engineers and owners information about the kind, quality and merits of the work done by the industry; to make public the terms and conditions of this Agreement in order to avoid grievances and jurisdictional disputes; and to provide expanded opportunities for employment of journeyperson sheet metal workers.

**SECTION 3.** The Sheet Metal Industry Promotion Fund of New York City shall be administered by Trustees appointed solely by the Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. The Sheet Metal Industry Promotion Fund of Nassau and Suffolk Counties shall be administered by Trustees appointed solely by SMACNA of Long Island, Inc. Representatives of the respective Industry Promotion Funds shall meet with representatives of the Union to establish liaison at least bimonthly. The Industry Promotion Fund of New York City shall be administered pursuant to the Declaration of Trust dated April 7, 1970, and any amendments thereto. The Industry Promotion Fund of Nassau and Suffolk Counties shall be administered pursuant to the Declaration of Trust dated October 1, 1969, and any amendments thereto.

**SECTION 4.** The Industry Promotion Fund of New York City shall provide up to the sum of fifty thousand dollars and no cents ($50,000.00) per year for the purpose of education and promotion of sheet metal informational material, as well as for securing and disseminating certain industry and project information to all Employers. The Union shall participate in the subject program as to the designation of personnel, allocation of funds and the formulation and administration of same.

**SECTION 5.** There shall be established a program to provide paramedical training for a fixed number of journeypersons each year. This training shall take place outside of the regular work hours and the cost of the training program shall be paid by the Industry Promotion Fund of New York City.

## ARTICLE XIV
## OWNERS AND OWNER-MEMBERS

**SECTION 1.** The Employer shall employ at least one (1) Journeyperson Sheet Metal Worker who is not a member of the firm on all work specified in Article I of this Agreement.

**SECTION 2.** The Employer agrees that not more than one (1) owner, partner, officer, stock holder, or Agent involved either directly or indirectly in the ownership or management of a sheet metal shop or business shall work with the tools of the trade or on any productive equipment or on the work specified in Article I of this Agreement, but such work shall be confined to the Employers shop only.

**SECTION 3.** Owner-members must operate in accordance with provisions of the International Association of Sheet Metal, Air, Rail and Transportation Workers Constitution and Ritual, and the Trust Agreements of the various Funds, such as Vacation, Health and Welfare, Pension, and Annuity.

**SECTION 4.** The Union agrees that the terms and conditions herein will be available only to Sheet Metal Contractors who maintain a properly equipped fabrication shop. This shall not apply to Architectural, Specialty and Environmental Balancing Contractors.

**SECTION 5.** Each Owner-member shall be required to contribute to all the Funds a minimum of one thousand eight hundred (1,800) hours per year.

## ARTICLE XV
## WORK RULES

**SECTION 1.** Journeyperson sheet metal workers and registered apprentices covered by this Agreement shall provide for themselves all necessary hand tools. The Employer shall provide all power tools.

**SECTION 2.** Journeyperson sheet metal workers and registered apprentices covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of an automobile or other

| APPRENTICE HOURLY WAGE AND BENEFIT EFFECTIVE OCTOBER 28, 2021 TO JULY 27, 2022 | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Journey person | Pre-Apprentice | First Year | Second Year | Third Year | Fourth Year | Fifth Year (6 mos.) |
| | | 6 Mo. Term | 1st & 2nd Term | 3rd & 4th Term | 5th & 6th Term | 7th & 8th Term | 9th Term |
| | 100% | 25% | 35% | 45% | 55% | 70% | 80% |
| Wages | $52.10 | $18.32 | $18.25 | $23.47 | $28.68 | $36.50 | $41.70 |
| Vacation Fund | $6.75 | $0.00 | $2.38 | $3.05 | $3.72 | $4.74 | $5.40 |
| National Pension Fund | $16.95 | $0.85 | $5.93 | $7.63 | $9.32 | $11.87 | $13.56 |
| Annuity Fund | $8.69 | $0.00 | $2.89 | $3.79 | $4.67 | $6.00 | $6.90 |
| Health & Welfare Fund | $12.88 | $4.62 | $4.68 | $5.79 | $7.09 | $9.03 | $10.30 |
| SUB Fund | $0.99 | $0.00 | $0.29 | $0.39 | $0.50 | $0.65 | $0.77 |
| Local Pension Fund | $4.47 | $0.00 | $1.58 | $4.02 | $4.11 | $4.23 | $4.33 |
| SASMI Fund | $3.08 | $0.00 | $1.08 | $1.44 | $1.74 | $2.19 | $2.49 |
| Local Education Fund | $1.18 | $1.18 | $1.18 | $1.18 | $1.18 | $1.18 | $1.18 |
| ITI/NEMI Fund | $0.17 | $0.17 | $0.17 | $0.17 | $0.17 | $0.17 | $0.17 |
| JLM/Equality Fund | $1.81 | $0.00 | $0.63 | $0.81 | $1.00 | $1.27 | $1.45 |
| Industry Promotion Fund | $0.55 | $0.00 | $0.55 | $0.55 | $0.55 | $0.55 | $0.55 |
| Scholarship Fund | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 |
| TOTAL HOURLY RATE | $109.64 | $25.16 | $39.63 | $52.31 | $62.75 | $78.40 | $88.82 |
| | | | | | | | |
| Total Taxable Wages | $58.85 | $18.32 | $20.63 | $26.52 | $32.40 | $41.24 | $47.10 |
| Total Fringe | $50.79 | $6.84 | $19.00 | $25.79 | $30.35 | $37.16 | $41.72 |
| Total Hourly Rate | $109.64 | $25.16 | $39.63 | $52.31 | $62.75 | $78.40 | $88.82 |
| | | | | | | | |
| Working Assessments | $2.97 | $0.18 | $1.19 | $1.51 | $1.78 | $2.17 | $2.44 |
| Building | $0.02 | $0.00 | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 |
| PAL Fund | $0.05 | $0.00 | $0.05 | $0.05 | $0.05 | $0.05 | $0.05 |
| Total UNION Wage deductions | $3.04 | $0.18 | $1.26 | $1.58 | $1.85 | $2.24 | $2.51 |

## JOURNEYPERSON HOURLY WAGE PACKAGE
## 10-28-2021 TO 7-27-2022

| | |
|---|---|
| WAGES | $52.10* |

FRINGE BENEFITS

| | |
|---|---|
| Vacation Fund | $ 6.75 |
| Welfare Fund | 12.88 |
| Annuity Fund | 8.69 |
| SUB Plan | 0.99 |
| JLM/Equality Fund | 1.81 |
| Scholarship Fund | 0.02 |
| Local Pension Fund | 4.47 |
| Education Fund | 1.18 |
| National Pension Fund | 16.95 |
| SASMI Fund | 3.08 |
| ITI/NEMI Fund | 0.17 |
| Industry Promotion Funds | 0.55 |
| | $57.54 |

$109.64

Note: the following wage package increases shall apply as follows:

| | |
|---|---|
| November 1, 2022 | $2.25 |
| November 1, 2023 | $3.00 |
| November 1, 2024 | $3.00 |

---

*The Foreperson minimum rate shall be two dollars ($2.00) per hour over scale where there are six (6) or more workers on the job site.

## WEEKLY APPRENTICE SCHOOL STIPEND

### TERMS

| | |
|---|---|
| 1st | $722 |
| 2nd | $722 |
| 3rd | $928 |
| 4th | $928 |
| 5th | $1,134 |
| 6th | $1,134 |
| 7th | $1,443 |
| 8th | $1,443 |
| 9th | $1,649 |

### PRE-APPRENTICE

| | |
|---|---|
| 1st Week | $120.00 |
| 2nd Week | $120.00 |
| 3rd Week | $120.00 |
| 4th Week | $120.00 |

| | |
|---|---|
| **SHEET METAL & AIR CONDITIONING CONTRACTORS ASSOCIATION OF NEW YORK CITY, INC.** | **INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS LOCAL UNION NO. 28** |
| **Negotiating Committee** | **Negotiating Committee** |
| Victor Gany, Chairman | Eric Meslin, Chairman |
| Frank Doka | James Callahan |
| Joseph Grgas, Jr. | Raymond Minieri |
| Brad Mattes | Brian Nigro |
| Frank Narciso | Frank Nitto |
| Ronald J. Palmerick | Fernando Robles |
| Mike Cunney | Robert Rotolo |
| Christopher Weickert | Salvatore Starace |
| William Rothberg, Executive Director | Ralph Tortora |
| John Contrubis, Associate Director | Timothy Wilton |

**SMACNA OF LONG ISLAND, INC.**
**Negotiating Committee**

Jeffrey Porrello, Chairman
Steven Benkovsky
Randy Buchter
John Hauser
Al LaBella
Michael DiGiuseppi
Melissa Barbour, Chapter Executive

42

## SIDE LETTER AGREEMENT

The parties agree that, effective January 1, 2022, in addition to the grievance and arbitration procedures contained in Article XVIII of the Collective Bargaining Agreement between International Association Sheet Metal, Air, Rail and Transportation Workers Local Union No. 28 and Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc. (hereinafter "CBA"), that in the event a disputes arising out of the alleged failure of signatory contractors to (a) make contributions as required under the CBA or (b) post an adequate bond as required by the CBA or written policy of the employee benefit funds, such dispute shall be submitted for a binding arbitration before a Joint Adjustment Board, consisting of four (4) representatives of SMACNA, and four (4) representatives of the Union (the "Panel"). The Panel shall attempt to meet on a monthly basis but shall in any event meet no less than quarterly while there are disputes pending. The presence of any four (4) representatives shall constitute a quorum necessary for the hearing of disputes, provided that at all times there are a minimum of two (2) representatives of the Union and two (2) representatives of SMACNA, one (1) from SMACNA of New York City, Inc and one (1) from SMACNA of Long Island, Inc. to constitute the quorum. In the event that there are an unequal number of representatives as between the Union and SMACNA at a meeting each side will nevertheless have equal voting rights. In the event of a deadlock, or where a dispute has been pending for more than three (3) months, the dispute may be submitted for arbitration in accordance with the arbitration provisions of Article XVIII. The Panel shall have all the powers granted to arbitrators pursuant to the Civil Practice Law and Rules of the State of New York and the Federal Arbitration Act. Service of the Notice of Panel Hearing, Demand for Arbitration, and Panel's Opinion and Award may be made by registered mail, certified mail, or overnight delivery service to the employer's last known address. In any proceeding to confirm the Panel's Opinion and Award, service may be made by Certified Mail, personal delivery or by overnight delivery service (not including via e-mail or other electronic delivery) within or without the State of New York, as the case may be. The decision rendered by the Panel shall be final and binding on the Employer, the Union, and the Funds. The decision of the JAB under this Side Letter Agreement shall have precedence over any decision of the JAB under the Article XVIII of this CBA regarding or related to the meaning, interpretation or application of Articles XII and XIII of the CBA or the alleged violation of the Employer's obligation to make required fringe benefit contributions to any of the Funds as required under Articles XII and XIII.

For New York City SMACNA
By: _____

For SMACNA of Long Island, Inc.
By: _Melvin Barber_____

S.M.A.R.T. Local Union No. 28
By: _Eric Meslin_____